UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 19-23765-CIV-MORENO

ALIGNED BAYSHORE HOLDINGS, LLC,

    Plaintiff,

vs.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

    Defendant.
_____/

## FINAL ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE AND CLOSING CASE

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss Plaintiff's Complaint for Declaratory Relief Compelling Appraisal and for Ancillary Relief, and Defendant's Request for Judicial Notice in support of its motion to dismiss. THE COURT has considered the motion and request, the responses in opposition, the replies, the pertinent portions of the record, and being otherwise fully advised in the premises, it is ADJUDGED that the motion and request are GRANTED for the reasons outlined below, and the case DISMISSED with PREJUDICE.

## I. Background

This action arises from an earlier case filed in this district presently before the Honorable Robert N. Scola, styled *Aligned Bayshore Holdings, LLC v. Westchester Surplus Lines Insurance Co.*, case number 18-cv-21692. On May 17, 2018, Plaintiff Aligned Bayshore Holdings, LLC filed an amended complaint in the related action alleging two claims against Defendant Westchester Surplus Lines Insurance Company: (1) breach of contract under the applicable

commercial property insurance policy and (2) bad faith.[1] Plaintiff stated, under the first section of the amended complaint which was titled "Nature of Action," that "[t]his is an action arising from Westchester's breach of the insurance contract it issued to Aligned and for Westchester's failure to timely and properly adjust and pay Aligned's windstorm and flood damage claims." Plaintiff sought $15.5 million for damages to Monty's Restaurant (the building) and the surrounding marina area that were allegedly caused by Hurricane Irma. It wrote that "[t]he policy provided coverage for Aligned's windstorm and flood damage claims, including physical damage and business interruption." A few days later, Magistrate Judge Edwin G. Torres promulgated discovery procedures, and, a few months after that, on August 24, 2018, the parties effectively began discovery, with Plaintiff serving its initial disclosures under Federal Rule of Civil Procedure 26.[2]

After extensive discovery spanning more than half a year (at least), the case proceeded to summary judgment where, for one reason or another, the parties filed cross-motions for summary judgment dealing not with windstorm damages, but rather flood damages. The cardinal issue in the case, as laid out in Plaintiff's motion, became whether and which statement of values would apply to the flood coverage under the insurance policy. Plaintiff argued that the policy provided for $10 million in blanket flood coverage and did not incorporate a statement of values. Judge Scola subsequently entered an order granting final summary judgment in favor of Defendant.[3]

Around three months later, on September 10, 2019, Plaintiff filed a separate action, this one, seeking a declaratory judgment to compel appraisal so that it may "expeditiously obtain a

---

[1] Judge Scola ultimately dismissed the claim for bad faith without prejudice.

[2] The Court will detail some of the discovery engaged in by the parties in section III of this Order for purposes of analyzing Defendant's waiver argument.

[3] Judge Scola would later grant Plaintiff's motion for reconsideration and vacate final judgment. Thereafter, the parties once again filed cross-motions for summary judgment dealing with the discrete issue of statement of values and flood coverage under the applicable insurance policy. Those motions are ripe.

2

determination of the amount of covered windstorm damage suffered as a result of Hurricane Irma." In seeking appraisal, Plaintiff relied on the same insurance policy it cited in the related action. It then pointed to the appraisal provision itself, which stated in relevant part:

> **2. Appraisal**
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.
> If there is an appraisal, we will still retain our right to deny the claim.

In response, Defendant filed a motion to dismiss accompanied by a request for judicial notice of the filings in the related action. Defendant argued that over the course of litigation in the related action, in a period spanning almost fifteen months, Plaintiff extensively litigated, and conducted discovery on, the issue of windstorm damages, thus waiving its right to appraisal. Plaintiff, in turn, denied the accusation, and pointed to the summary judgment proceedings as evidence that the parties only litigated the issue of flood damages and statement of values.

The Court now, respectively, analyzes the request for judicial notice and motion to dismiss.

## II. Legal Standard

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient facts in his or her complaint to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When ruling on a motion to dismiss, a court must view the complaint in a light most favorable to the plaintiff, and accept the plaintiff's well-pleaded facts as true. *See Twombly*, 550 U.S. at 555-56. In order to establish a facially plausible claim, a plaintiff must show "more than a

3

sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. While the plaintiff need not provide "detailed factual allegations," the "obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### III. Analysis

**A. The Court May Take Judicial Notice of Certain Filings in the Related Action for the Limited Purpose of Determining Whether Plaintiff Litigated Windstorm Damages**

Before addressing the heart of Defendant's argument, the Court must decide whether it may take judicial notice of certain filings in the related case to determine whether Plaintiff did, under the totality of the circumstances, waive its right to compel appraisal. Under Federal Rule of Civil Procedure 201(b), a court may take judicial notice of an "adjudicative fact" when such a fact "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). An adjudicative fact is one "relevant to a determination of the claims presented in a case." *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1204 (11th Cir. 2004).

Consistent with Rule 201(b), courts regularly take judicial notice of record documents from other proceedings. *See, e.g., Griffin v. Verizon Commc'ns Inc.*, 746 F. App'x 873, 876 (11th Cir. 2018); *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013). The reason is that the authenticity of such documents is not subject to reasonable dispute. *Griffin*, 746 F. App'x at 876; *Makro Capital of Am., Inc. v. UBS AG*, 436 F. Supp. 2d 1342, 1350 (S.D. Fla. 2006). Notably, a "court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.' Accordingly, a court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the

4

litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)).

Here, Defendant requests that the Court take judicial notice of, among other things, the amended complaint filed in the related case, along with various discovery documents, including answers to interrogatories, responses to requests for production, expert witness disclosures, motions in limine, and deposition transcripts. Plaintiff, in rebuttal, argues that by looking to these documents, the Court converts Defendant's motion to dismiss into a motion for summary judgment. Case law squarely undercuts Plaintiff's claim. "A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. Public records are among the permissible facts that a district court may consider." *Universal Express, Inc. v. U.S. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006); *see also Griffin*, 746 F. App'x at 876 (similar); *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (similar).

Plaintiff also argues that the Court "may not take judicial notice of the facts cited" in the related action. But, by looking to the related litigation, the Court is not assessing the veracity of the claims and/or defenses, nor factual findings by Judge Scola. Instead, the Court is merely looking to the record to determine if Plaintiff ever litigated the issue of windstorm damages, and if so, sought appraisal for such damages. While the Court is not aware of any case on point applying judicial notice in the waiver context, the Court observes that other courts routinely do so to assess res judicata.[4] Those courts look to other dockets for the limited purpose of establishing the existence or absence of certain claims—not to determine if those claims were successful, but rather to determine "whether the facts or evidence necessary to maintain the suit are the same in

---

[4] As explained by the Florida Fourth District Court of Appeal, "[r]es judicata is a judicial doctrine used to bar parties from relitigating claims previously decided by a final adjudication on the merits." *Woodward v. Woodward*, 192 So. 3d 528, 530 (Fla. 4th DCA 2016) (quoting *W & W Lumber of Palm Beach, Inc. v. Town & Country Builders, Inc.*, 35 So. 3d 79, 82-83 (Fla. 4th DCA 2010)).

5

both actions." *Woodward v. Woodward*, 192 So. 3d 528, 531 (Fla. 4th DCA 2016) (quoting *Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1209 (Fla. 4th DCA 2005)) (alteration in original). *See also Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 892-93 (11th Cir. 2013) (taking judicial notice of separate action for purposes of determining res judicata); *Horne*, 392 F. App'x at 802-03 (similar).

### B. Taking Judicial Notice of the Filings in the Related Case, the Court Finds that Plaintiff has Waived the Right to Compel Appraisal

Taking judicial notice of the filings in the related case, the Court agrees with Defendant's contention that Plaintiff has waived its contractual right to seek appraisal in this case. Under Florida law, waiver is "the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right." *Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005). This general definition of waiver is applicable to the right to seek appraisal. *Fla. Ins. Guar. Ass'n v. Branco*, 148 So. 3d 488, 493 (Fla. 5th DCA 2014). In determining waiver, the essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the right to seek appraisal. *J&E Invs., LLC v. Scottsdale Ins. Co.*, No. 16-61688-CIV, 2016 WL 8793337, at *2 (S.D. Fla. Aug. 18, 2016) (citing *Fla. Ins. Guar. v. Maroulis*, 153 So. 3d 298, 300 (Fla. 5th DCA 2014)).

After a review of the totality of the circumstances, the Court finds that Plaintiff has acted inconsistently with its right to seek appraisal. For a period stretching almost fifteen months, Plaintiff engaged in various pre-trial activities, including drafting its amended complaint and engaging in discovery, with the main aim of obtaining flood *and* windstorm damages—windstorm damages for which it only now, some fifteen months later in a separate suit, seeks appraisal.

From the onset of the related case, Plaintiff declared in its amended complaint, in a section revealingly titled "Nature of Action," that "[t]his is an action arising from Westchester's breach of the insurance contract it issued to Aligned and for Westchester's failure to timely and properly

adjust and pay Aligned's *windstorm* and flood damage claims." (Emphasis added). A few months later, in response to Defendant's motion to dismiss count II of the amended complaint, Plaintiff unequivocally noted again that "[t]his action arises from Westchester's breach of the insurance contract issued to Aligned and for Westchester's failure to timely and properly adjust and pay Aligned's windstorm and flood damage claims." Finally, more than one year after filing suit, and well after the conclusion of discovery, Plaintiff similarly wrote in its omnibus motions in limine that "[t]his action arises from Westchester's breach of the insurance contract issued to Aligned for windstorm and flood damage claims arising from Hurricane Irma."

Plaintiff fervently writes in response to the motion to dismiss that it never sought windstorm damages in the related action, and that any reference to such damages was merely passing or descriptive in nature. Upon closer review of the record, however, the Court finds that this is simply not the case. On August 24, 2018, Plaintiff served its initial disclosures, and explicitly detailed that "[t]he damages claimed by Aligned Bayshore in this action are . . . 3. *Wind damages, in an amount to be determined after completion of the reconstruction.*" (Emphasis added). In those same initial disclosures, Plaintiff also described that it would be relying on any "Documents supporting the Wind Claim." Perhaps most telling of all, Plaintiff's counsel conceded that it sought windstorm damages in a discovery hearing held on January 14, 2019 before Magistrate Judge Torres. At that hearing, which took place at least five months into discovery, the judge asked Plaintiff's counsel, point blank, what damages Plaintiff sought. Plaintiff's counsel answered, in no unclear terms, that "I am seeking up to the policy limits as to the flood coverage *and I am seeking coverage under the windstorm portion of the policy.*" (Emphasis added). Counsel would eventually detail that windstorm damage, saying his client was seeking 11.8

7

[million dollars]—10 million [dollars], plus I think 1.8 [million dollars] for the windstorm."[5]

That the focus of the related action eventually drifted away from windstorm damages and flowed towards flood damages, as the parties' cross-motions for summary judgment and Judge Scola's subsequent order on those motions evince, is of no matter. Under Florida law, "the question of waiver of appraisal is not solely about the length of time the case is pending or the number of filings the appraisal-seeking party made. Instead, the primary focus is whether the [moving party] acted inconsistently with [his or her] appraisal rights." *Branco*, 148 So. 3d at 493. Here, Plaintiff directly undertook discovery on and pursued windstorm damages. Its combined actions—claiming windstorm damages immediately upon initiating suit; specifically listing windstorm damages in its initial disclosures; requesting 1.8 million dollars for windstorm damages at a discovery hearing at least five months after the initiation of discovery; and reaffirming, by written motion, that it still sought windstorm damages after the termination of discovery—imply the voluntary and intentional relinquishment of Plaintiff's right to compel appraisal.

The instant case is analogous to several others in this district applying Florida law and finding waiver in the appraisal context. In *Versailles Sur La Mer Condominium Association, Inc. v. Lexington Insurance Co.*, a case similarly dealing with an insurance dispute over property damage allegedly caused by Hurricane Irma, plaintiff filed its complaint and then, five months later, sought appraisal for the first time. No. 6:18-cv-1125, 2018 WL 3827154, at *1-4 (M.D. Fla. July 24, 2018), *adopted by* No. 6:18-cv-1125, 2018 WL 3817758 (S.D. Fla. Aug. 10, 2018). The court justifiably found waiver, writing "[t]his action began in state court in January and the first written demand for appraisal came in late May, *after* an extensive document production where 'it

---

[5] Various other examples abound, in the exhibits attached to Defendant's motion to dismiss, which demonstrate that Plaintiff extensively litigated the issue of windstorm damages. Plaintiff answered interrogatories, responded to requests for production, produced documents, disclosed expert witnesses, and conducted depositions of those expert witnesses for the purpose of obtaining windstorm damages.

became evident that this litigation, and especially the discovery aspect of it, will be lengthy and complex.'" *Id.* at *5. Like in *Versailles*, the Plaintiff in the related action was still, five months into discovery, seeking and litigating windstorm damages. *See also Tamiami Condo. Warehouse Plaza Ass'n, Inc. v. Markel Am. Ins. Co.*, No. 19-CV-21289, 2019 WL 6130445, at *1-2 (S.D. Fla. Nov. 19, 2019) (finding, in yet another case dealing with an insurance dispute stemming from Hurricane Irma, waiver based on the plaintiff seeking appraisal after eight months of litigation: "the Court finds that Plaintiff has waived its right to an appraisal by actively participating in litigation for the past eight months . . . . Plaintiff has engaged in extensive discovery").

## IV. **Conclusion**

Because the Plaintiff has acted inconsistently with its right to seek appraisal by extensively litigating the issue of windstorm damages over a period of almost fifteen months, the Court finds that Plaintiff has waived the right to compel appraisal. Accordingly, it is

**ADJUDGED** that Defendant's Motion to Dismiss Plaintiff's Complaint for Declaratory Relief Compelling Appraisal and for Ancillary Relief, and accompanying Request for Judicial Notice, are GRANTED and the complaint DISMISSED with PREJUDICE. It is further

**ADJUDGED** that all pending motions are DENIED as MOOT and the case CLOSED.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd of December 2019.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record